IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01277-LTB

MARY BARONE,

    Plaintiff,

v.

UNITED AIRLINES, INC.,

    Defendant.

___

**ORDER**
___

This employment case is before me on Defendant, United Airlines, Inc.'s, ("United"), Motion for Summary Judgment and accompanying Brief [**Docket ## 36, 37**], Plaintiff, Mary Barone's, Response [**Docket # 59**], and Defendant's Reply [**Docket # 63**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT in part and DENY in part Defendant's Motion for Summary Judgment [**Docket # 36**].

**I. BACKGROUND**

As Plaintiff's ADEA and state law claims are dismissed without prejudice below, I address only those facts relevant to Plaintiff's Title VII claim herein. The relevant alleged facts are as follows. Plaintiff began working for United in February 1995. In October 2005, Plaintiff was promoted to the position of Manager of Business Process Administration at United's Denver, Colorado, station and received a ten percent pay raise. In this position, Plaintiff was responsible for budgeting, station administration, parking, RTD, invoicing, and city

correspondence. Plaintiff's supervisor—and the person responsible for her promotion—was Todd Sprague. Sprague continued to be Plaintiff's supervisor until her employment with United ended on August 17, 2006.

At some point before April 2006, Plaintiff told Sprague that some male managers in the "ramp organization"—the group that works with the aircraft on the runway—at United were improperly being paid an overtime rate when they did not work beyond the normal shift. Sprague referred the matter to Kevin Mortimer, the ramp manager.

In early 2006, Plaintiff told Sprague that a number of non-management ramp service personnel were working excessive overtime hours. Sprague referred the matter to Carolyn Forrest, the manager of business administration. Plaintiff also told Sprague that a number of union employees were not properly swiping their time cards. Sprague referred the matter to the union to take remedial action. Plaintiff did not notice any gender difference regarding who was being paid overtime or who was improperly swiping their time cards.

In April 2006, United created a new position entitled Business Analyst. Plaintiff did not apply for the position. Scott Hildebrand, a United employee under Plaintiff's supervision, was placed in the position and given a fifteen percent raise. Plaintiff alleges she asked Sprague why Hildebrand was receiving a fifteen percent raise—while she only received a ten percent raise—and Sprague stated: "Because he's a man."

In June 2006, Plaintiff's job responsibilities were modified to include scheduling of manpower for customer service and the ramp organization. Plaintiff told Jeanne Nelli in Human Resources that she had reservations about assuming these responsibilities because the previous manager was allegedly forced out of that position as the result of friction with the union.

Plaintiff wanted to ensure she would have adequate support from management. On June 29, 2006, Plaintiff sent an e-mail to Sprague regarding her new responsibilities, stating: "Just so you know I LOVE IT down here—there is so much to do."

Also in June 2006, Plaintiff reported to Sprague that the highest paid supervisors in Job Grade F were all male, and that the men in Job Grade G received higher scores on their evaluations than the women in the same Job Grade. In June 2006, Plaintiff—who was in Job Grade G—received a "3" on her evaluation instead of the top score of "4."

In late July 2006, Plaintiff reported to Sprague that men in the ramp organization management were receiving unearned vacation pay, but women were not. Sprague referred the matter to James Kyte, United's General Manager in Denver. Kyte sent Plaintiff an e-mail, stating: "Nice job. Have I told you lately how much I appreciate you?"

At some point after Plaintiff was given the scheduling duties in June 2006, she reported to Sprague that the ramp organization was hiring new male employees at higher pay rates than women who were already employed in the organization. Plaintiff reported the men working the ramp were earning more than women who were in management positions, even when the women were of a higher Job Grade. Plaintiff also reported the newly hired men were younger than the already-employed women.

In early August 2006, Sprague spoke with Plaintiff by phone regarding her midyear review for 2006. Plaintiff alleges Sprague told her: she was not effective; she did not do good work; she was basically a clerk; she did not follow directions; and she worked too hard, even on weekends. Plaintiff alleges Sprague told her that Kevin Mortimer said she needed to "grow some cojones," and that she should work on the ramp because she needed a dose of reality. Sprague

3

allegedly stated James Kyte had a similar opinion of Plaintiff. Plaintiff found Sprague's comments to be degrading, humiliating, and shocking.

On August 3, 2006, Plaintiff and Sprague had a discussion regarding Plaintiff's investigation into the time card swiping issue. Sprague told Plaintiff she had improperly handled the investigation and had soured union relations. Plaintiff e-mailed Sprague at his home e-mail address, stating: "Looks to me like I have a choice here, one would think with this track record of never doing anything right, they are not the right person for the job. You should look for someone who can do a better job . . . I can only work when I know I am of value—I know now that I am not. You will never be able to change my mind. THE PICTURE IS VERY CLEAR!"

On August 14, 2006, Sprague met with Plaintiff to discuss her mid-year evaluation in which he concluded her performance was "successful." Sprague told Plaintiff there were areas she needed to work on to remain successful, including her ability to accept feedback.

On August 17, 2006, Plaintiff met with Sprague and Jeanne Nelli. At that meeting, Sprague allegedly told Plaintiff she could no longer remain in her management position and would have to either resign or return to her former position as a customer service agent in Orange County, California. Plaintiff wrote a letter of resignation, but then tore it up. When Sprague left the room, Plaintiff wrote her resignation letter again. Two to four weeks later, Plaintiff requested to be reinstated, but her request was denied.

After Plaintiff resigned, her position was temporarily filled by a male, Gary Dryer. The position was ultimately filled by a woman, Kelly Holder, approximately two months after Plaintiff's resignation.

Plaintiff filed a complaint on June 18, 2007 [**Docket # 1**], claiming: (1) age

discrimination in termination and retaliation, in violation of the ADEA; (2) gender discrimination in termination and retaliation, in violation of Title VII; (3) age and gender discrimination in termination and retaliation under Colorado state law; (4) breach of contract; and (5) promissory estoppel. In her Proposed Final Pretrial Order [**Docket # 43**], Plaintiff requested to dismiss her claim of discrimination under the ADEA. That request is treated as a notice of dismissal under FED. R. CIV. P. 41, and Plaintiff's ADEA claim is considered dismissed without prejudice.

## II. PRESENT MOTION

United filed the present motion for summary judgment on March 12, 2008 [**Docket ## 36, 37**]. First, United argues Plaintiff cannot establish a *prima facie* case of employment discrimination because Plaintiff will be unable show a material question of fact exists whether she was subject to an adverse employment action. United argues Plaintiff voluntarily resigned and then requested to be reinstated to the same position several weeks later. Thus, according to United, Plaintiff cannot claim she was actually discharged or that she was constructively discharged because her working conditions were so intolerable that she had no choice except to resign. (As Plaintiff states in her response in opposition to United's motion for summary judgment [**Docket # 59**] that she does not allege the pay differential between her and Scott Hildebrand, or her performance evaluation of "3," to be discrete adverse employment actions, I do not address United's argument on these points.)

Second, United argues Plaintiff cannot establish a *prima facie* case of employment discrimination because Plaintiff will be unable to show a material question of fact exists whether similarly-situated male employees were treated differently than she was.

Third, United argues Plaintiff cannot establish a *prima facie* case of retaliation because

5

Plaintiff will be unable to show an adverse employment action. United adds that several of the activities Plaintiff alleges were protected—including reporting the time card swiping and the non-management overtime abuses—did not implicate sex discrimination or any other protected category of activity.

Finally, United argues it had legitimate non-discriminatory reasons for its actions, and Plaintiff will be unable to show these reason to be pretextual. United argues Plaintiff expressed her desire to resign, and accepting her resignation was the most appropriate response.

### III. PLAINTIFF'S RESPONSE

Plaintiff responds [**Docket # 59**] with a 153 paragraph blizzard of "undisputed material facts," most of which are not "facts" at all, but are merely speculation—*see, e.g.,* ¶¶ 2, 6–8, 10, 16, 22, 24–26, 31–36, 43–45, 48, 50, 52–53, 56, 83, 87–88, 100, 103, 110, 112–114, 116–118, 120, 125, 130, 135, 137, 140, 145, 150—or legal conclusion—*see, e.g.,* ¶¶ 2–5, 8, 10, 13–14, 21, 25–36, 39, 42, 44–45, 50, 52–53, 56, 59, 73, 76, 83, 87, 104, 106, 108, 110, 112–113, 115–118, 120–121, 130–131, 134–137, 140, 150. These so-called "facts" are not suitable grist for the summary judgment mill. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); *Tavery v. United States*, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994) (citing *Carey v. Beans*, 500 F. Supp. 580, 583 (E.D. Pa. 1980)).

Many more of the "facts" are not found in the record submitted—*see, e.g.,* ¶¶ 39–41, 112, 115, 117, 125, 129. It is the duty of the parties, not the Court, to provide and point to evidence in the record supporting their positions. *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513–14 (10th Cir. 1990). It is not this Court's task to comb through Plaintiff's submissions in an effort to link alleged facts to her arguments. *Barcikowski v. Sun Microsystems, Inc.*, 420 F. Supp. 2d

1163, 1169 (D. Colo. 2006). Plaintiff's unsupported allegations in these paragraphs are likewise insufficient to overcome a motion for summary judgment. *See Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 800 (10th Cir. 1991) ("A nonmoving party cannot survive a motion for summary judgment based on bare allegations in the pleadings without supporting evidence.").

I also note that Plaintiff's counsel appears to represent at least six other plaintiffs filing independent gender discrimination suits against United. Plaintiff's counsel takes the unusual and unseemly tack of presenting unproven allegations from these cases as "undisputed material facts," and, by implication, presenting the plaintiffs in these other cases as disinterested witnesses to this case. *See, e.g.*, ¶¶ 1–4, 9–11, 13–17, 25, 27, 29, 32–36, 61, 75, 88, 116, 138–140, 150. Self-serving statements made by the parties in these other cases are no more admissible for purposes of establishing a genuine question of fact in this case than they would be in the cases in which the statement were solicited. *See Piercy v. Maketa*, 480 F.3d 1192, 1197–98 (10th Cir. 2007); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992). Accordingly, to the extent these witnesses' statements are presented as evidence of United's state of mind, they too are speculative and conclusory and form an insufficient basis upon which to find the existence of a material question of fact. *See Payne v. Pauley*, 337 F.3d 767, 771–73 (7th Cir. 2003) (discussing cases).

Excluding this considerable chaff, Plaintiff responds that her resignation was forced, not voluntary. Plaintiff argues she was given the Hobson's choice of resigning or returning to a part-time position in Orange County, California, and such an untenable choice amounted to a change in the terms, conditions, or privileges of her employment. Even if the resignation was not actually forced, however, Plaintiff argues her conditions of employment had become so

7

intolerable that a reasonable person in her position would feel compelled to resign—thereby giving rise to a constructive discharge claim. In support, Plaintiff claims she was prevented from doing her job, threatened with demotion to the ramp, and verbally castigated by Sprague. Plaintiff also alleges she was sexually harassed by Kevin Mortimer.

Plaintiff next responds that she does not need to show whether similarly-situated male employees were treated differently than she was in order to prove her *prima facie* case. Plaintiff argues she need only show (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). Even if Plaintiff is required to show similarly-situated male employees were treated differently, however, Plaintiff argues this element is met because her immediate replacement was male. Plaintiff also argues her long history of good performance is sufficient to establish a *prima facie* case of discrimination.

Turning to her retaliation claim, Plaintiff argues there was a sufficient temporal proximity between her reporting the instances of gender inequities in overtime and vacation pay and the adverse employment actions. Plaintiff claims she reported the vacation pay inequities to Sprague less than one week before she was forced to resign.

Finally, Plaintiff asserts the following as evidence of pretext: Sprague did not consider a lesser form of discipline and did not attempt to place Plaintiff in another position; Sprague has provided inconsistent and varying explanations for why Plaintiff was forced to resign; Plaintiff was forced to resign despite her long history of good-to-excellent performance; United has a long history of discrimination against women; Sprague and Mortimer were openly sexist; and United

never investigated the instances of gender-related inequities discovered by Plaintiff and reported to Sprague. Plaintiff also argues Sprague's justifications for removing Plaintiff from a management position were based on subjective criteria and should be consider with skepticism.

## IV. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore,

only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby, supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id.* Accordingly, in this employment discrimination case, Plaintiff must show material facts in dispute by a preponderance of the evidence in order to defeat United's motion for summary judgment. Plaintiff meets this burden if she sets forth evidence that—if believed by the ultimate factfinder—makes the question of United's wrongdoing more likely than not.

## V. ANALYSIS

When a plaintiff relies on circumstantial evidence to prove employment discrimination, the Court applies the three-step burden shifting framework set forth in *McDonnell Douglas* and its progeny. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973); *Godwin v. Sw. Research Inst.*, 237 F. App'x 306, 308 (10th Cir. 2007); *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). At the first step, the plaintiff must establish a *prima facie* case of a prohibited employment action. *Plotke*, 405 F.3d at 1099. If the plaintiff makes out a *prima facie* case, the burden then shifts to the employer to state a legitimate nondiscriminatory reason for the action. *Id.* If the employer meets this burden, then summary judgment is warranted unless the employee can show the existence of a genuine issue of material fact as to whether the proffered

10

reasons are pretextual. *Id.*

In order to establish the *prima facie* burden, it is necessary to first define the alleged discriminatory act in question. *See Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (holding the appropriate *prima facie* burden depends "on the context of the claim and the nature of the adverse employment action alleged"); *see also Hysten v. Burlington N. and Santa Fe. Ry. Co.*, 296 F.3d 1177, 1181–82 (10th Cir. 2002). The Supreme Court noted in *McDonnell Douglas* that "the specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas, supra*, 411 U.S. at 802 n.13. The relevant question is whether a plaintiff shows "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criteria under the Act." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 (1978) (quotations omitted).

Although Plaintiff alleges United discriminated or retaliated against her by removing her from management, demoting her to a non-management position, transferring her to Orange County, California, and reducing her to part-time employment, Plaintiff presents no evidence that any of these events actually occurred—nor does it appear she could in light of the fact that she resigned while still employed full-time in a management position in Denver. Plaintiff's remaining alleged discriminatory act is that she was discharged or forced to resign on August 17, 2006, because she was a woman and/or in retaliation for reporting instances of sex discrimination in United's Denver station operation.

"An actual discharge occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated." *Fischer v.*

11

*Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). An actual discharge does not occur, however, when an employee voluntarily resigns rather than work under what she perceives to be undesirable conditions. *Id.* at 980. By Plaintiff's own admission, she "was told that I could either resign or be demoted [and] assigned to another state. Under duress, I was forced to resign, and this amounted to a constructive discharge." *See* EEOC Charge of Discrimination [**Docket # 59-43**]. Accordingly, Plaintiff cannot claim to have been actually discharged. *See Fischer*, 525 F.3d at 980.

Even when an employee appears to resign voluntarily, however, her resignation can be considered an adverse employment action if she can show she was constructively discharged. *See Fischer, supra*, 525 F.3d at 980. "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004).

The parties dispute the appropriate test to determine whether Plaintiff meets her *prima facie* burden under a constructive discharge theory. United argues Plaintiff "must demonstrate (1) membership in a protected class, (2) adverse employment actions, and (3) disparate treatment among similarly situated employees." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Plaintiff, on the other hand, argues she "need only show that: (1) [s]he belongs to a protected class; (2) [s]he was qualified for [her] job; (3) despite [her] qualifications, [s]he was discharged; and (4) the job was not eliminated after [her] discharge." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). Regardless of which test applies, it is not disputed that if the Court concludes that the evidence of discrimination fails as a matter of

law, summary judgment for the defendant is the proper result. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 n.5 (10th Cir. 2007) (quotations omitted).

A review of Tenth Circuit precedent establishes that, under a constructive discharge theory, a plaintiff establishes a *prima facie* case of discrimination by showing: (1) she belongs to a protected class; (2) she was qualified for her job; (3) her working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign; and (4) the job was not eliminated after her resignation. *See Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). A plaintiff establishes a *prima facie* case of retaliatory constructive discharge by showing: (1) she engaged in opposition to Title VII discrimination; (2) her working conditions were made so intolerable that a reasonable person in her position would have felt compelled to resign; and (3) a causal connection existed between the intolerable conditions and her protected activity. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000).

After reviewing the evidence submitted by Plaintiff, and construing all reasonable inference in her favor, I conclude she has failed to present sufficient evidence that her working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign. "The plaintiff's burden in a constructive discharge case is substantial and showing that the employer's conduct meets the definition of 'tangible employment action' or 'adverse employment action' is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007) (quotations omitted). The relevant question is not whether the employee's resignation resulted from the employer's actions, but rather is whether the employee had any

13

other reasonable choice but to resign in light of those actions. *See Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004).

By Plaintiff's own testimony, on August 17, 2006—two weeks after she emailed Sprague, "Looks like to me I have a choice here, one would think with this track record of never doing anything right, they are not the right person for the job. You should look for someone who can do a better job . . ."—she was given the choice of either resigning her employment with United, or being demoted from a management position and transferred to her last union position as a part-time customer service agent in Orange County, California. Plaintiff argues that she would still have been qualified for many open jobs in Denver, but she did not attempt to apply for any of those jobs. Indeed, Plaintiff presents no evidence showing she made any inquiry into any other employment with United at all. Instead, she simply asked for her old job back, even if it meant working for Sprague. This is inconsistent with her allegation that Sprague made her working conditions objectively intolerable.

Plaintiff also alleges Sprague made her employment intolerable by being overly and unfairly critical of her, and by interfering with the performance of her duties out of an allegiance to Kevin Mortimer. Plaintiff alleges Mortimer sexually proposed her and both Mortimer and Sprague made sexually-tinged comments about her appearance. Plaintiff admits, however, that she never reported any of this while she was employed at United and even sought to have Kevin Mortimer write her year-end evaluation. Plaintiff's actions in this regard are simply inconsistent with the high burden required to pursue a constructive discharge claim. *See Fischer, supra*, 525 F.3d at 981–82; *Rabinovitz v. Pena*, 89 F.3d 482, 489–90 (7th Cir. 1996). Accordingly, summary judgment in favor of United on Plaintiff's Second Claim for Relief for Title VII discrimination

14

and retaliation is appropriate.

## VI. PLAINTIFF'S REMAINING CLAIMS

Having granted summary judgment in favor of United on Plaintiff's Title VII claim, I now turn to the proper disposition of her remaining state law claims. As this case was originally considered on federal question jurisdiction, the dismissal of Plaintiff's Title VII claim extinguishes my jurisdiction and generally prevents me from reviewing the merits of the remaining pendent state law claims. *See McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006); *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998). While I may retain pendent jurisdiction if the interests of judicial economy, convenience, and fairness to the parties so require, the preference for dismissal is particularly high where, as here, the federal claims are dismissed before trial. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Lancaster*, 149 F.3d at 1236; *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

Under the well-established doctrine of comity to the states, Colorado courts have a strong interest in enforcing their own laws. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352 (1988). I find no compelling reason—taking into account the interests of judicial economy, convenience, and fairness to the litigants—why federal jurisdiction should be retained in this case, particularly in light of the fact that Plaintiff raises independent Colorado state law claims in her Third Claim for Relief. Accordingly, I dismiss Plaintiff's remaining claims without prejudice. *See Lancaster, supra*, 149 F.3d at 1236.

## VII. CONCLUSION

Plaintiff fails to show a genuine issue of fact whether United terminated her employment or forced her to resign in violation of Title VII. Accordingly, Defendant's Motion for Summary Judgment [**Docket # 36**] is GRANTED in part and DENIED in part as follows:

1. Plaintiff's Second Claim for Relief—violation of Title VII—is DISMISSED WITH PREJUDICE;

2. Plaintiff's Third, Fourth, and Fifth claims for relief are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction;

3. As Plaintiff has abandoned her First Claim for Relief—violation of the ADEA—this claim is DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 41;

4. Defendant is awarded costs.

Dated: September 19, 2008.

BY THE COURT:

*[signature]*
Lewis T. Babcock, Judge